UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

NANCY REUSCHEL as
*Executrix of the Estate of*
Louise McGraw, *deceased*, and
LORETTA HOLCOMB as
*Executrix of the Estate of*
Charlotte Rodgers, *deceased*, and
*on behalf of all others similarly situated*,

        Plaintiffs,

v.                             CIVIL ACTION NO. 5:22-cv-00279

CHANCELLOR SENIOR MANAGEMENT, LTD.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending are Defendant Chancellor Senior Management, Ltd.'s ("CSM") (1) Motion to Dismiss Second Amended Class Action Complaint [ECF 59], and (2) Motion to Revise and Reconsider March 11, 2019, Order Denying Defendant's Motion for Judgment on the Pleadings [ECF 62], both filed April 17, 2023. Plaintiffs Nancy Reuschel and Loretta Holcomb responded in opposition [ECF 67, 68] on May 1, 2023, to which CSM replied. [ECF 71, 72].

**I.**

On October 25, 2016, Plaintiffs, acting as executrices of their decedent mothers' estates, instituted this action on behalf of their decedents, Louise McGraw and Charlotte Rodgers,[1]

---

[1] The style is amended to correct Ms. Rodgers' last name. [*See* ECF 71 at 3].

and others similar situated in the Circuit Court of Raleigh County. [ECF 1-1]. On July 7, 2022, following extensive litigation in state court, CSM removed. It asserts the jurisdictional amount exceeds the $5 million threshold prescribed by the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). [ECF 1 at 5-8].

Plaintiffs' Second Amended Class Action Complaint ("Complaint") alleges CSM owns, operates, controls, and manages four senior assisted living facilities in West Virginia, namely, (1) the Greystone Senior Living Community of Beckley, (2) the Wyngate Senior Living Community of Parkersburg, (3) the Wyngate Senior Living Community of Barboursville, and (4) the Wyngate Senior Living Community of Weirton. [ECF 57 ¶ 4]. Decedents Ms. McGraw and Ms. Rodgers resided in the Greystone Senior Living Community ("Greystone"). Plaintiffs allege Greystone's staffing shortages resulted in the decedents' inadequate care. [*Id.* at ¶¶ 63-77]. Plaintiffs allege CSM falsely misrepresents facility staffing needs based upon a "Resident Assessment System;" they assert Greystone instead "staffs its facilities based on pre-determined labor budgets designed to meet corporate profit objectives and routinely and systematically fails to staff its facilities in a manner sufficient to meet the assessed needs of its resident populations." [*Id.* at ¶ 11]. Plaintiffs contend this is an "unfair and deceptive trade practice" and "a scheme to defraud seniors, persons with disabilities and their family members by making misrepresentations, misleading statements, and concealing material facts such that reasonable consumers are misled." [*Id.*] Plaintiffs contend they and others have thus overpaid for services "based on the reasonable expectation that [CSM] would staff its facilities to meet the collective assessed needs of each facilities' [*sic*] residents." [*Id.* at ¶ 16].

Plaintiffs assert various, resulting unfair or deceptive acts under the West Virginia Consumer Credit and Protection Act ("WVCCPA") as follows:

1. "The act, use, or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission, in connection with the false advertisement of any goods or services[;]"

2. "Engaging in conduct which creates a likelihood of confusion or of misunderstanding[;]"

3. "Advertising goods or services with intent not to sell them as advertised[;]"

4. "Representing that goods or services . . . have characteristics, ingredients, uses, benefits . . . that they do not have . . .[;]" and

5. "Representing that goods or services are of a particular standard, quality or grade . . .[if they are of another.]"

[ECF 57 at ¶¶ 27, 112]; see W. Va. Code §§ 46A-6-104 and 46A-6-106; see also W. Va. Code § 46A-6-102(7).  Plaintiffs seek declaratory, injunctive, and monetary relief, as well as attorney's fees and costs, and "other relief and damages the Court may deem proper, including but not limited to restitution and civil penalties" as a result of CSM's alleged unlawful practices.  [ECF 57 at ¶¶ 114-18].

On April 17, 2023, CSM moved to dismiss. It asserted Plaintiffs' claims (1) abated following the deaths of Ms. McGraw and Ms. Rodgers, (2) are barred by the applicable statute of limitations, (3) fail to allege a concrete, particularized injury necessary to confer standing, and (4) fail as a matter of law inasmuch as CSM is not a "seller" of assisted living services, nor have Plaintiffs pled an actual, ascertainable out-of-pocket loss. CSM further asserts (1) Plaintiffs lack standing to assert claims on behalf of residents at the Wyngate facilities in Parkersburg, Barboursville, and Weirton, and (2) dismissal is warranted inasmuch as Plaintiffs seek duplicative and/or unavailable damages.

On March 11, 2019, the Circuit Court of Raleigh County rejected the abatement contentions in CSM's Motion for Judgment on the Pleadings. The Circuit Court relied upon *Stanley v. Sewell Coal Co.*, 169 W. Va. 72, 285 S.E.2d 679 (1982). CSM seeks reconsideration of

the Order based upon decisional law postdating *Stanley*, namely, *inter alia*, *Horton v. Prof'l Bureau of Collections of Md., Inc.*, 238 W. Va. 310, 794 S.E.2d 395 (2016).

Plaintiffs assert there is no error in the March 11, 2019, Order. They also contend they (1) have timely and sufficiently alleged standing and viable WVCCPA claims, and, (2) while not entitled to civil penalties, nevertheless believe their restitution claims remain viable.

## II.

*Federal Rule of Civil Procedure* 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions." *Twombly*, 550 U.S. at 555. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *McCleary-Evans*, 780 F.3d at 585; *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 122, 141 S. Ct. 1376 (2021); *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Walters v. McMahen*, 684

F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Est. Companies, Inc.*, 679 F.3d 278, 291 (4th Cir. 2012)) (internal quotation marks omitted). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012).

As noted in *Iqbal*, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also S.C. Dep't of Health & Env't Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (citing *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### III.

*A. Standing*

CSM asserts Plaintiffs fail to allege a concrete, particularized injury: "Plaintiffs complain of alleged understaffing at four West Virginia [assisted living facilities] without alleging that their [d]ecedents or any other [assisted living facility] resident failed to receive any goods or services to which they were contractually entitled." [ECF 60 at 11]. CSM asserts alternatively that -- assuming standing for their decedents and other Greystone residents -- Plaintiffs lack Article III footing to prosecute claims on behalf of residents who resided in the three Wyngate assisted living

1. **Plaintiffs' Individual Standing**

To establish Article III standing, a plaintiff must establish three elements: (1) an injury in fact "that is both 'concrete and particularized' and actual or imminent, not conjectural or hypothetical;" (2) a sufficient causal connection between the injury suffered and conduct complained of; and (3) a likelihood "'that the injury will be redressed by a favorable decision.'" *Dep't of Educ. v. Brown*, 600 U.S. ---, ---, No. 22-535, 2023 WL 4277209, *5 (U.S. June 30, 2023) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023). "An injury is particularized if it affects the plaintiff in a personal and individual way." *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020) (internal citations and quotations omitted). "[A]n injury is concrete if it is '*de facto*' – that is, if it actually exists." *Id.*

Furthermore, "[e]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Wikimedia Foundation v. National Security Agency*, 857 F.3d 193, 207 (4th Cir. 2017) (quoting *Lujan*, 504 U.S. at 561). "A defendant may challenge [standing at the motion-to-dismiss stage] in one of two ways: facially or factually." *Id.* (quoting *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)). Where, as here, a facial challenge is made and "the defendant contends that the complaint 'fails to allege facts upon which [standing] can be based, . . . the plaintiff 'is afforded the same procedural protection' that exists on a motion to dismiss." *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

The Complaint sufficiently alleges a concrete and particularized injury in fact. [*See* ECF 57]. Plaintiffs allege charges based upon their assessed personal care needs, and hence residents with greater needs are charged a higher rate. [*Id.* at ¶ 15]. Although CSM putatively utilizes an "assessment tool" that "totals the number of staffing minutes required to meet all of the resident's [*sic*] needs -- which then "assigns the resident to a 'level of care' which drives the monthly price the resident must pay to reside in the facility [*Id.* at 17]" -- Plaintiffs allege CSM "staffs its facilities based on pre-determined labor budgets designed to meet corporate profit objectives." [*Id.* at ¶ 11]. Plaintiffs further allege CSM's alleged misrepresentations and omissions have caused their overpayments for services. For example, the Complaint alleges Ms. McGraw was charged a monthly fee of $3,463 for personal care charges. [*Id.* at ¶ 63]. CSM falsely asserted, however, that it would use the assessment tool and "include a care giver checking on Ms. McGraw every 15 minutes." [*Id.* at ¶ 67]. Instead, "[CSM] staffed the entire Courtyard [*sic*] facility with only two assistants to meet the care of the entire facility." [*Id.* at ¶ 68].

The Complaint alleges this inadequate staffing resulted in injuries and poor hygiene. [*Id.* at ¶¶ 69-72]. The insufficient staffing also caused Ms. McGraw to pay for "a private sitter to sit with her at Greystone, in addition to paying for the personal care services [CSM] had committed to provide." [*Id.* at ¶ 68]. Similar allegations are made respecting Ms. Rodgers. [*Id.* at ¶ 74-75]. Plaintiffs note that an awareness of "the true facts about [CSM's] corporate policy of ignoring its Resident Assessment System and the Personal Service and Care Plans . . . , would . . . have" resulted in them going elsewhere or avoiding "'Community Fees' and monthly 'Personal Care' charges, or in all reasonable probability" paying less to CSM. [*Id.* at ¶ 24]. These allegations produce the requisite concrete, particularized injury for individual standing. They also negate CSM's contention Plaintiffs fail to plead an "ascertainable loss" under *West Virginia Code* § 46A-

6-106. *See* Syl. Pt. 16, *In re West Virginia Rezulin Litigation*, 214 W. Va. 52, 57, 585 S.E.2d 52, 57 (2003).

### 2. Plaintiffs' Standing as Class Representatives

There is disharmony respecting the best way to ascertain a class representative's standing to sue on behalf of members of the putative class. "Most jurisdictions . . . have adopted a 'class certification' approach, allowing an action to proceed once the named plaintiff demonstrates her individual standing to bring a claim, leaving for the Rule 23(a) analysis questions about commonality, typicality, and adequacy of representation." *Singh v. Lenovo (United States) Inc.*, 510 F. Supp. 3d 310, 319 (D. Md. 2021) (citing *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015)).

As noted, CSM asserts Plaintiffs lack standing to assert claims on behalf of non-Greystone residents who resided in one of CSM's other three assisted living facilities. That assertion fails. Plaintiffs allege "[o]peration of all of [CSM's] assisted living facilities in West Virginia are [*sic*] conducted under a single umbrella." [ECF 57 at ¶ 4]. Specifically, Plaintiffs allege "[t]he documents, forms, data and software related to the admission, pricing, assessment, and staffing at all [CSM] assisted living facilities are identical," and "[CSM's] West Virginia assisted living facilities are not permitted to establish separate practices, policies, and procedures for admission, pricing, assessment of resident and staffing." [*Id.* at 5]. Based upon these and other allegations, Plaintiffs plausibly plead CSM has a facility-wide practice of misrepresenting to residents that it staffs all of its facilities based upon their assessed needs. [*Id.* at ¶ 11]. Facility-specific allegations are thus unnecessary at this point.

### B. *Statute of Limitations*

CSM contends Plaintiffs' WVCCPA claims are barred by the one-year statute of limitations set forth in *West Virginia Code* section 55-2-12(c). Section 55-2-12(c) governs the limitations period for claims that could not be asserted at common law upon the claimant's death where no other limitation is otherwise prescribed. *See* W. Va. Code § 55-2-12 ("Every personal action for which no limitation is otherwise prescribed shall be brought . . . within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative."). Ms. McGraw and Ms. Rodgers began residing at Greystone on March 27, 2013, and July 14, 2014, respectively. This action was filed on October 25, 2016. According to CSM, "[t]he alleged representations upon which the Complaint is based necessarily occurred at, or prior to, the date of each resident's admission" to the facility. CSM thus notes Plaintiffs' decedents' claims are beyond the one-year limitations period. [ECF 60 at 5-6].

Respecting the putative class members, CSM maintains "the claims of numerous absent class members whose assisted living residencies commended prior to October 25, 2015[,] would likewise be barred." [*Id.* at 6]. CSM further contends "[t]o the extent there may be members of the putative class defined in Paragraph 85 of the Complaint who entered an [assisted living facility] after this civil action was filed, those claims are likewise barred by any statute of limitation" inasmuch as Plaintiffs' First Amended Complaint failed to "preserve the claims of any person who became a resident after October 25, 2016, the date on which [the] action was filed." [*Id.*] The contentions do not withstand scrutiny.

First, CSM incorrectly contends section 55-2-12(c) controls. Plaintiffs' claims are brought under Article 6 of the WVCCPA. *West Virginia Code* section 46A-5-101 provided

9

pertinently as follows at the time of filing:

> With respect to violations arising from consumer credit sales, consumer leases, or consumer loans, *or from sales as defined in article six of this chapter*, no action pursuant to this subsection may be brought more than four years after the violations occurred. This limitations period shall apply to all actions filed on or after September 1, 2015.

W. Va. Code § 46A-5-101(1) (2015) (emphasis added). Article 6 defines "sale" as "any sale, offer for sale or attempt to sell . . . any services or offer for services for cash or credit." *Id.* at § 46A-6-102(5). Plaintiffs' claims arise from misrepresentations flowing from the sale of assisted living services. Specifically, they allege CSM concealed it staffs its facilities to maximize profits rather than its residents' assessed needs. That concealment plausibly alleges an "unfair or deceptive act or practice" in violation of section 46A-6-104. Plaintiffs' claims are thus subject to the four-year limitation period set by section 46A-5-101(1).

Any follow-on contention the four-year limitations period applies only to actions against creditors or debt collectors was explicitly rejected by the Supreme Court of Appeals of West Virginia in *Harper v. Jackson Hewitt, Inc.*, 227 W. Va. 142, 152-53, 706 S.E.2d 63, 73-74 (2010) (concluding "[i]n analyzing the plain language of W. Va. Code § 46A-5-101(1), in its entirety, we cannot agree with [Defendant] that the statute is only intended to apply to 'creditors.'"). In sum, section 46A-5-101(1) does not restrict the four-year limitations period as CSM suggests. The unfair and deceptive acts or practices claims arise from an alleged "sale as defined in article six of [the WVCCPA]" and are thus subject to § 46A-5-101(1)'s four-year limitations period. The individual decedent claims along with the claims of any putative class member who commenced residency at one of the four identified assisted living facilities on or before October 25, 2012, are within the applicable limitations period.

10

Second, as noted, CSM asserts any claims for putative class members added by the revised class definition are time barred, irrespective of the applicable limitations period. It asserts Plaintiffs' First Amended Complaint failed to "preserve the claim of any person who became a resident after October 25, 2016." [ECF 60 at 6]. That contention fares no better. *Federal Rule of Civil Procedure* 15(c)(1) pertinently provides as follows:

> An amendment of a pleading relates back to the date of the original pleading when:
>
> . . .
>
> > (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> >
> > (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by the amendment:
> >
> > > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> > >
> > > (ii) know or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(B)-(C)(i)(ii). Rule 15(c) treats plaintiff-party and defendant-party amendments differently. The advisory committee notes provide pertinently as follows:

> The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs.

Fed. R. Civ. P. 15(c) advisory committee's note to 1966 amendment.

Plaintiffs' First Amended Complaint defined the putative class as "all individuals that resided [at] any of the four Chancellor Senior Living assisted living communities located in

11

West Virginia in the four years preceding the filing of this lawsuit." [ECF 1-1 at 36, ¶ 85]. The April 3, 2023, Second Amended Complaint offers an amended class definition to include:

> [A]ll individuals that entered any of the four assisted living communities alleged herein to be controlled by [CSM] after October 25, 2012, whose Residency Agreement contained an arbitration provision adopting the Rules of the American Health Law Association ("AHLA") and required any person requesting arbitration to pay a filing fee to AHLA.

[ECF 57 at ¶ 85]. CSM appears to contend Plaintiffs' expansion of the class definition effectively adds "new plaintiffs" to the suit. CSM thus asserts "[t]he conduct, transactions and occurrences upon which the new claimants' cause of action are based are necessarily different" inasmuch as "[t]hey turn on alleged representations and omissions made at different times to a different set of persons, whose individual reliance upon [the] same purportedly influenced their choice to enter an [assisted living facility] managed by CSM rather than use other potential alternatives." [ECF 71 at 13]. CSM further asserts it lacked sufficient notice of this expansion given that it "litigated this case for nearly six years without having reason to believe it would have to defend claims made by persons who entered . . . Greystone or any other [assisted living facility] after October 25, 2016." [*Id.*] CSM thus maintains Plaintiffs' six-year delay "is plainly prejudicial." [*Id.*]

    CSM is mistaken. First, the named class representatives are the same. The case is yet between the original Plaintiffs and others similarly situated (whomever that may ultimately include) and CSM. *See Adams v. Insurance Co. of North America*, 426 F. Supp. 2d 356, 371 (S.D.W. Va. 2006) (quoting *Schillinger v. Union Pacific R. Co.*, 425 F.3d 330, 334 (7th Cir. 2005) (explaining "the expansion of a proposed class does not change the parties to the litigation nor does it add new claims.")); *see also Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005) (explaining that despite plaintiff's expansion of the class definition "[t]his is still just one suit, between the original litigants. Litigants and judges regularly modify class definitions").

12

Nonetheless, the identical claims asserted in both pleadings are premised on the exact same conduct by CSM. It is thus difficult for CSM to claim prejudice from the broader class definition when the substance of the claims is unchanged.

The claims are and have always been that CSM violated the WVCCPA by engaging in unfair or deceptive acts or practices. "Whether this was done with respect to one or one thousand [individuals], or in one or one thousand separate instances, is not of any great moment save that it may make the litigation more complex . . . ," which does not presumptively give rise to prejudice. *Adams*, 426 F. Supp. 2d at 378. The limitations-based arguments are thus meritless

C. **Failure to State a Claim**

CSM next claims it (1) "is not the licensed owner-operator of . . . Greystone or any other relevant assisted living facility," and (2) "did not sell or provide assisted living services to Plaintiffs, their [d]ecendents or any putative class member and received no 'cash or credit' from any consumer for doing so." [ECF 60 at 16]. CSM thus maintains it "lacks the authority, much less the duty, to ensure any relevant facility's compliance with the law governing the operation of [the assisted living facilities] or any corresponding duty that might arise under the [WVC]CPA, because it is not the licensee of any [assisted living facility]." [*Id.*] In support of these contentions, CSM cites to W. Va. Code § 16-5D-6, which pertinently provides as follows:

> No person may establish, operate, maintain, offer, or advertise an assisted living residence within this state unless and until he or she obtains a valid license therefor . . . The licensee shall be responsible for, and shall have complete control of, the operation and premises of the assisted living residence and the personal assistance and supervision provided to the residents: *Provided*, That the secretary may review any leases or any contracts, subcontracts, agreements, or arrangements for the provision of on-site services to the residents of an assisted living residence to ensure the proper care, safety, and welfare of current or potential residents.

W. Va. Code §16-5D-6(a). It is undisputed that Beckley Health Partners is the licensee of

13

Greystone. And CSM is not the licensee of any of the other three assisted living facilities. CSM thus contends it must be dismissed. But CSM has not supplied any authority requiring it be the licensee of the subject facilities in order for it to answer for WVCCPA violations. The argument thus fails.

Respecting CSM's contention that it is not a "seller" of assisted living facility services, Plaintiffs point to CSM's "Management Services Agreement." Plaintiffs contend the Agreement "clearly demonstrates CSM control" over the four assisted living facilities. [*Id.*]. They also cite deposition testimony of CSM's Director of Operations, Scott Shroyer. Mr. Shroyer has testified "CSM directs its facilities to staff based on strict budgets by corporate headquarters that are designed to meet profit objectives and acknowledged that CSM has the ability to disapprove and override a facility's decision to hire additional staff." [*Id.* at 17 (citing ECF 57 ¶ 50)]. This testimony appears foundational to Plaintiffs' well-pled contention "CSM is the sole actor engaging in the deceptive and unfair practices at the heart of [their] claim, that [their] injury is the result of this corporate level conduct, and that CSM is appropriately the only Defendant in this action." [*Id.*].

Under the WVCCPA, any person who suffers a monetary loss resulting from an unfair or deceptive act may bring a damages claim. *See* W. Va. Code § 46A-6-106(a). To state a claim under the WVCCPA, a plaintiff must allege: "(1) unlawful conduct by a seller;[2] (2) an ascertainable loss on the part of the consumer; and (3) proof of a causal connection between the alleged unlawful conduct and the consumer's ascertainable loss." *White v. Wyeth*, 227 W. Va. 131, 140, 705 S.E.2d 828, 837 (2010).

---

[2] It is noted the WVCCPA does not appear to define the term "seller." Instead, it only defines the term "sale" as including "any sale, offer for sale or attempt to sell any . . . services or offer for services for cash or credit." W. Va. Code § 46A-6-102(5).

The Complaint pleads a plausible WVCCPA claim. It is enough presently that CSM's alleged authority and control over all four of the assisted living facilities renders it a de facto "seller" of assisted living services. Final adjudication awaits dispositive motions.

D. *Abatement and Reconsideration*

Next is CSM's abatement contention seeking reconsideration of Judge Dimlich's March 11, 2019, Order. Judge Dimlich concluded Plaintiffs' WVCCPA claims survived the deaths of their decedents. [*See* ECF 62-1 at 4-5]. Generally, "[r]emoval of a case from state to federal court neither nullifies what the state court did, nor precludes the federal court from taking further steps that it could have taken if the case had originated there." *Holmes v. AC&S*, Inc., 388 F. Supp. 2d. 663, 668 (E.D. Va. 2004) (quoting *Granny Foods, Inc. v. Teamsters*, 415 U.S. 423 (1974)). Pursuant to "Rule 54(b), a district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *U.S. Tobacco Coop., Inc. v. Big South Wholesale of Virginia, LLC*, 899 F.3d 236, 256 (4th Cir. 2018) (internal citations and quotations omitted). "'Compared to motions to reconsider final judgments pursuant to Rule 59(e) . . . , Rule 54(b)'s approach involves broader flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light.'" *Id.* (quoting *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017)).

But "the discretion afforded by Rule 54(b) 'is not limitless[.]'" *Id.* (quoting *Carlson*, 856 F.3d at 325). Interlocutory orders entered pre-removal ought generally be treated as the law of the case. *Carlson*, 856 F.3d at 325. And that means "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) (quoting *Christianson v. Colt*

15

*Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). So while a district court may reconsider an earlier ruling by a state trial judge, "[t]he ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment of law." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). An interlocutory order may thus be revised under the same circumstances presented when departing from the law of the case: (1) a subsequent trial produced substantially different evidence; (2) a change has occurred in applicable law; or (3) there has been a clear error causing manifest injustice. *U.S. Tobacco Coop.*, 899 F.3d at 257. "[W]here, as here, the order was entered by one judge and then reviewed by another, . . . the latter judge should be hesitant to overrule the earlier determination." *Id.* (internal citations and quotations omitted).

Judge Dimlich recognized the WVCCPA is silent as to survivability. But he concluded Plaintiffs' WVCCPA claims survived under *West Virginia Code* section 55-7-8a as analogous to claims for fraud and deceit. That textual analysis comports with controlling law. *See Stanley*, 169 W. Va. at 76-77, 78, 285 S.E.2d at 682-83 (noting retaliatory discharge claims do "not expressly utilize fraud concepts," but concluding such claims could be characterized as a species of "constructive fraud," rendering them akin "to an action for fraud and deceit" under West Virginia's survival statute).

CSM contends Judge Dimlich did not consider more recent decisions in *Wilt v. State Auto. Mut. Ins. Co.*, 203 W. Va. 165, 506, S.E.2d 608, 610-12 (1998) and *Horton*, 238 W. Va. 310, 794 S.E.2d 395. In *Wilt*, the plaintiffs attempted to characterize their West Virginia Unfair Trade Practices Act ("UTPA") claim as one sounding in fraud. 203 W. Va. at 167, 506 S.E.2d at 610. The West Virginia Court rejected the analogy: "Viewing claims under the [UTPA] as necessarily fraudulent in nature [wa]s problematic . . . because the type of conduct that constitutes an unfair settlement claim may include a variety of factual scenarios which lack the

16

requisite elements of a fraud claim." *Id.* at 167-68, 506 S.E.2d at 610-11. Specifically, the court explained while the UTPA prohibited "misrepresentation or deception" in claims settlement, the UTPA also proscribed unfair settlement practices unrelated to the elimination of fraudulent conduct in order to foster timely and fair claims-processing standards. *Id.* at 168-69, 506 S.E.2d at 611-12. The court thus concluded UTPA claims were not survivable under *West Virginia Code* section 55-7-8a(a) inasmuch as they did not "expressly fall[ ] within the classification of property damage, personal injury, or fraud or deceit." *Id.* at 170, 506 S.E.2d at 613.

In *Horton*, the Supreme Court of Appeals of West Virginia confronted whether a decedent plaintiff's claim under Article 2 of the WVCCPA survived. The claim arose under *West Virginia Code* section 46A-2-127, which prohibits debt collectors from using "any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers." *Id.* at 311, 794 S.E.2d at 396. Plaintiff alleged defendant had violated subsection (c) of this provision "by failing to clearly disclose the name of the business entity making a demand for money upon [p]laintiff's indebtedness." *Id.* at 399, 794 S.E.2d at 314. Specifically, plaintiff alleged defendant had failed to clearly disclose its identity in the telephone calls to him on "the Caller ID readout," and instead displayed a toll-free number in an attempt to deceive him of the fact that a debt collector was calling. *Id.* at 400, 794 S.E.2d at 315. Before resolution of the litigation, plaintiff passed away, and his estate was substituted as plaintiff. *Id.* at 399, 794 S.E.2d at 314.

Relying on *Stanley*, plaintiff contended the decedent's claim "was sufficiently analogous to deceit and fraud so as to survive" his death under *West Virginia Code* section 55-7-8a(a). *Id.* at 313, 794 S.E.2d at 398. The Supreme Court of Appeals rejected the contention: "While the traditional elements of constructive fraud . . . may well apply to an act that constitutes

17

a violation of W. Va. Code § 46A-2-127(c), other conduct that violates [the same provision] does not." *Id.* at 314, 794 S.E2d at 399. The court further explained "[t]he decedent's claim [was] an example of conduct that [did] not constitute constructive fraud" inasmuch as there was no indication "the [defendant's] employee was not calling from a toll-free number" or "that the decedent relied upon the alleged misrepresentation and was damaged thereby." *Id.* at 314, 315, 794 S.E.2d at 399, 400. The court thus concluded inasmuch as decedent's claim lacked evidence of a materially false misrepresentation, his claim under W. Va. Code § 46A-2-127(c) of the WVCCPA varied materially from a claim for deceit or fraud under W. Va. Code § 55-7-8a(a), and thus did not survive. *Id.* at 315, 794 S.E. at 400.

The allegations here are different. Unlike the WVCCPA claims in *Horton*, Plaintiffs proceed under Article 6 of the WVCCPA. Even so, the proper analysis remains muddled inasmuch as it is remains unclear from *Wilt* and *Horton*, when read together, whether survivability of a claim hinges on the particular facts supporting the claim alleged or all the different scenarios in which the claim could be brought under the statute at issue. *See, e.g.*, *Wilt*, 203 W. Va. 167-68, 506 S.E.2d at 610-11 (acknowledging certain conduct prohibited by the UTPA may resemble the "traditionally recognized elements of a fraud claim," but concluding "[v]iewing claims under the [UTPA] as necessarily fraudulent in nature [wa]s problematic . . . because the type of conduct that constitutes an unfair settlement claim may include a variety of factual scenarios which lack the requisite elements of a fraud claim."); *Horton*, 238 W. Va. at 315, 794 S.E.2d at 400 (rejecting plaintiff's assertion that his claim under W. Va. Code 46A-2-127(c) was "sufficiently analogous to a claim for deceit and fraud under W. Va. Code § 55-7-8a(a) to survive the decedent's death" inasmuch as the facts underlying the § 46A-2-127(c) claim provided "no indication that the alleged misrepresentation was material and false" or "that the decedent relied upon the alleged

18

misrepresentation and was damaged thereby.").

If the former is true, Judge Dimlich was correct. If the latter is true, however, and the survivability of Plaintiffs' claim hinges on the different scenarios in which a claim under *West Virginia Code* section 46A-6-104 could be brought, there may be non-fraudulent ways to violate section 46A-6-104. And it is that rather misty state of affairs, along with an undeveloped evidentiary record, that counsel against the reconsideration urged by CSM. There is lacking at this point a clear error amounting to a manifest injustice. Accordingly, CSM's Motion to Revise and Reconsider Judge Dimlich's March 11, 2019, Order Denying Defendant's Motion for Judgment on the Pleadings [**ECF 62**] is **DENIED**.

### E. Damages

As noted, CSM's challenge to Plaintiffs' early request for civil penalties is now moot. But CSM persists in its claim Plaintiffs' request for both compensatory damages and restitution are duplicative, thus necessitating dismissal of Plaintiffs' restitution request. It is well established Plaintiffs may not ultimately make a double recovery against CSM. At this stage of the litigation, however, Plaintiffs are permitted to allege alternative damage theories until a definitive election of remedies is made. *See* Fed. R. Civ. P. 8. The Court thus declines presently to strike Plaintiffs' restitution request.

### IV.

Based upon the foregoing discussion, CSM's Motion to Dismiss [**ECF 59**] and Motion to Revise and Reconsider [**ECF 62**] are **DENIED**.

The Clerk is directed to send a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER: July 10, 2023

Frank W. Volk
United States District Judge