IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

NANCY REUSCHEL, as Executrix of the
Estate of Louise McGraw, deceased, and
LORETTA HOLCOMB as Executrix of
the Estate of Charlotte Rodgers, deceased,
and on behalf of all others similarly
situated,

                Plaintiffs,

vs.                                                     Civil Action No. 5:22-cv-00279

CHANCELLOR SENIOR MANAGEMENT,
LTD.,

                Defendant.

**ORDER**

Pending before the Court are the ***Plaintiffs' Revised Motion to Compel Answers to Interrogatories and Production of Documents*** (ECF No. 81), filed on May 31, 2023[1]; ***Chancellor Senior Management, Ltd.'s Response to Plaintiffs' Revised Motion to Compel Answers to Interrogatories and Production of Documents*** (ECF No. 90), filed on June 23, 2023, and the ***Plaintiffs' Reply in Support of Plaintiffs' Revised Motion to Compel Answers to Interrogatories and Production of Documents*** (ECF No. 103), filed on July 14, 2023. Following the undersigned's telephone conferences on these discovery matters, the parties indicated they may be resolved

---

[1] Also pending are ***Plaintiffs' Motion to Compel Answers to Interrogatories and Production of Documents*** (ECF No. 32) as well as ***Plaintiffs' Motion to Compel Answers to Interrogatories and Production of Documents*** (ECF No. 38) filed on February 10, 2023 and February 14, 2023, respectively. The undersigned hosted two TEAMS video conferences on these matters during which the parties represented they had made some progress in resolving some of the outstanding discovery requests – the undersigned then directed the Plaintiffs to file an updated pleading by May 31, 2023 (ECF No. 69). Accordingly, these earlier ***Motions to Compel*** are hereby **MOOT**. Accordingly, the Clerk is directed to **TERMINATE** the Motions (ECF Nos. 32, 38)

2

without the Court's intervention. However, despite having been given additional time to resolve the issues raised in the Plaintiffs' motion(s) and provided an extension to the briefing schedule in which to file a response and any reply, a number of items remain outstanding and require a Court order compelling same.[2]

## Background of Case

This lawsuit concerns an intended class action wherein the Plaintiffs have alleged the Defendant owns, operates, controls, and manages four senior assisted living facilities in West Virginia: the Greystone Senior Living Community of Beckley; the Wyngate Senior Living Community of Parkersburg; the Wyngate Senior Living Community of Barboursville; and the Wyngate Senior Living Community of Weirton. The Decedents, McGraw and Rodgers, were residents of the Greystone Senior Living Community; the Plaintiffs alleged that due to staffing shortages, the Decedents received inadequate care, which they contend is an unfair and deceptive trade practice and scheme to defraud seniors, disabled persons and their family members by making false representations and material misstatements of fact that misleads consumers. The Plaintiffs have further alleged that the Defendant staffed its facilities based on corporate profit goals instead of the assessed care needs of its resident populations.

Of relevance to this discovery dispute, the Court entered a scheduling Order that sets forth deadlines applicable to class certification, to be completed by August 7, 2023, with the remaining deadlines related to merits-based discovery to be completed by July 15, 2024. (ECF No. 27)

---

[2] The undersigned focuses on the outstanding discovery requests and arguments outlined in the Plaintiffs' Reply in Support of Plaintiffs' Revised Motion to Compel Answers to Interrogatories and Production of Documents (ECF No. 103), as it provides a slightly more streamlined list of discovery requests and the Defendant's responses thereto, particularly in light of the Court's Memorandum Opinion and Order entered on July 10, 2023 (ECF No. 102).

Plaintiffs' Argument Regarding Outstanding Document Requests and Interrogatories

1. Document Request Nos. 12[3], 13[4], 17[5], 18[6], 26[7]

The Plaintiffs assert the foregoing Requests seek documents and data related to the daily staffing of the Defendant's facilities and the collective needs of the Defendant's residents that are related to proving liability on a class-wide basis.

---

[3] Request for Production No. 12: "Documents and information sufficient to show daily staffing levels at Your West Virginia assisted living facilities within the four years preceding October 25, 2016."

[4] Request for Production No. 13: "Documents and information sufficient to show the systems and standards applicable to assessment of the Personal Care and Service Needs of residents of Your West Virginia assisted living facilities and deliveries of services to meet those assessed needs. This request includes, but is not limited to, all Personal Assessment forms in use in the four years preceding October 25, 2016, Nurse Policies and Procedures Manuals, Personal Care Manuals and any applicable electronic software."

[5] Request for Production No. 17: "Documents and information sufficient to show the total assessed care need points for the residential populations at Your West Virginia assisted living facilities for each day in the four years preceding October 25, 2016."

[6] Request for Production No. 18: "For each of Your West Virginia Assisted Living Facilities for each day in the four years preceding October 25, 2016, please provide the following information regarding hourly employees in Excel format: 1. First and Last name; 2. The Job title/category for each employee (e.g., CNA, aide, med-tech, dietary, housekeeping, activity, LPN, RN administrative, etc.); 3. Date and time of clock in; 4. Date and time of clock out; 5. Clock in and out times for break (or fixed hours break time on each shift or consecutive shifts worked); 6. Total hours worked; 7. Total break hours; 8. Date of hire; 9. Date of termination; 10. Reason for termination."

[7] Request for Production No. 26: "For each of Your West Virginia Assisted Living Facilities, please produce sufficient documents to show the daily resident census for each day in the four years preceding October 25, 2016."

2. Document Request Nos. 3[8], 23[9], 27[10], 28[11]; Interrogatory No. 4[12]

The Plaintiffs assert the foregoing Requests and Interrogatory seek documents related to common corporate policies, procedures, and practices.

In support of these discovery requests, the Plaintiffs argue that each of these Requests and Interrogatory meets the class certification requirements endorsed by Rule 23 of the Federal Rules of Civil Procedure as well as Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011). The Plaintiffs concede to some overlap of class-certification discovery and merits discovery, but dispute that they are trying to circumvent directly to merits.

For instance, documents and data related to daily staffing of the Defendant's facilities and the collective needs of its residents relate to commonality and predominance because this information will demonstrate a methodology to prove the Plaintiffs' claim that the Defendant systematically understaffed its facilities without regard to the aggregate assessed needs of the

---

[8] Request for Production No. 3: "Documents sufficient to show Your consideration, analysis, projection, and/or determination of staffing levels and budgets at Your West Virginia assisted living facilities in the four years preceding October 25, 2016."

[9] Request for Production No. 23: "All performance evaluations, disciplinary reports, counseling records and remedial plans for each of the following personnel working at Your West Virginia Assisted Living Facilities in the four years preceding October 25, 2016: (a) Executive Directors; (b) Assistant Executive Directors; (c) Wellness Manager; (d) Resident Coordinator; (e) Resident Manager; and (f) Any employees with responsibilities related to care-giver staffing."

[10] Request for Production No. 27: "Documents sufficient to show the 'occupancy levels' and 'combined needs' at Your West Virginia Assisted Living Facilities for each day in the four years preceding October 25, 2016, as You referred to in Your Response to Interrogatory 6 in Plaintiffs' First Set of Interrogatories that were served in the Raleigh County state court action bearing the Civil Action Number 16-C-698."

[11] Request for Production No. 28: ""Documents sufficient to show Your 'projected occupancy' levels at Your West Virginia Assisted Living Facilities for each day in the four years preceding October 25, 2016, as You referred to in Your Response to Interrogatory 6 in Plaintiffs' First Set of Interrogatories that were served in the Raleigh County state court action bearing the Civil Action Number 16-C-698."

[12] Interrogatory No. 4: "Please state how salespersons and management employees at Your assisted living facilities in West Virginia are compensated in the four years preceding October 25, 2016, including, but not limited to, your standards, policies and practices for awarding bonuses."

5

class.[13] The Plaintiffs have alleged that the Defendant made false and misleading statements that its assisted living care services are based on the assessed needs of its residents, but are actually based on corporate profit goals. Therefore, the discovery requests related to daily staffing and collective care needs are relevant and necessary to prove this common claim to the proposed class. The Defendant's contention that expert testimony is required to determine if an objective methodology exists ignores the controlling standard here – relevancy. The Plaintiffs further argue that these requests also comport with the typicality factor endorsed by Rule 23(a)(3) – the Plaintiffs' claims are typical of the class because the Defendant made false and misleading statements and material omissions to the Plaintiffs that gave rise to the reasonable expectation that the Defendant would determine staffing levels based on the assessed needs of its residents.

The Plaintiffs contend that their requests concerning corporate policies, procedures and practices are also relevant to Rule 23 class certification because they also comply with commonality, predominance and typicality factors – again, the documents and data requested relate to the Plaintiffs common claim that corporate profit goals instead of assessed care needs of the residents that govern daily staffing is the product of a practice and policy applied uniformly.[14] Specifically, Interrogatory No. 4 and Document Request No. 23 are relevant to demonstrate commonality, predominance and typicality factors, as they concern the Defendant's corporate practices and procedures related to staff compliance with the corporate staffing standards and compensation incentives for staying within pre-set budgets – *not* to prove ownership of the facilities.

---

[13] The Plaintiffs identify outstanding Document Request Nos. 12, 13, 17, 18, and 26 endeavor to obtain this information.

[14] The Plaintiffs identify Document Request Nos. 3, 27, and 28 which concern these specific reasons for requesting this information.

The Plaintiffs dispute the Defendant's claim that it does not control the disputed documents as they are the property of a non-party, specifically the assisted living facilities.[15] They argue that the Defendant has actual possession of these disputed documents by virtue of its agreement to manage these facilities; further, they assert that the Defendant's actual possession of these materials is demonstrated by the Defendant's production of the exemplar documents for the disputed requests. The Defendant even admits it may have access to these documents – this is further demonstrated by the Agreement(s) to Manage which have been made part of the record in this case.[16] In addition to being responsible for paying salaries to all personnel, the Agreement(s) to Manage also show that the Defendant has the authority to hire, discharge, evaluate, train, promote, and discipline staff; per the Agreement(s), the Defendant is also responsible for preparing the budget for the facilities, negotiate with residents regarding leases, licenses, and use agreements, record keeping and accounting procedures to produce reasonably reliable financial data, for delivering balance sheets and variance reports indicating actual versus budgeted revenue for the facilities. In short, the Defendant has access to all data responsive to Document Request Nos. 13, 17, 26, 27, and 28.

<u>Defendant's Opposition to Compulsion of Discovery</u>[17]

The Defendant contends that the Plaintiffs' Revised Motion includes legal authorities that

---

[15] The documents at issue concern Document Requests Nos. 12, 13, 17, 18, 23, 26, 27, and 28 and Interrogatory No. 4.

[16] The Plaintiffs cite ECF Nos. 14-3 at ¶ 3.3, 94-7 at 4-5.

[17] To the extent the Defendant asks this Court to deny the Plaintiffs' Revised Motion pending the outcome of a decision on its dispositive motions, the undersigned finds it appropriate to deny such arguments as moot given the recent entry of the Memorandum Opinion and Order (ECF No. 102) that denied the Defendant's Motion for Judgment on the Pleadings and Motion to Dismiss. Additionally, to the extent the Defendant asks this Court to deny the Plaintiffs' Revised Motion as it relates to their Interrogatory No. 2, the undersigned notes the Plaintiffs have waived any argument with respect to this Interrogatory (See ECF No. 103 at 2, fn1). Accordingly, the undersigned declines to address arguments related to this particular matter any further.

were not cited previously and should be considered waived under Rule 37.1(c) of the Local Rules of Civil Procedure. The Defendants further argue that the Plaintiffs' Revised Motion seeks merits-based discovery, specifically, information ostensibly suggesting the Defendant understaffed and exercised corporate control over the facilities named in their Complaint.

The Defendant asserts the Plaintiffs' outstanding requests fail to comply with Rule 23 requirements and Dukes jurisprudence because they seek evidence that will not generate common answers that support a class certification. The Defendant argues that the Plaintiffs' attempt to explore staffing and related issues is merits driven, and not helpful for class certification. While some of their requests might be common to all residents of a given facility, or even all facilities, this does nothing to address the next critical step in certification – whether these requests will generate common answers apt to resolve this lawsuit per Dukes.

Instances of premature merits-based discovery concern whether the Defendant exercised corporate control[18] over and insufficient staffing[19] at the facilities. The Defendant especially takes issue with requests concerning staffing because the Plaintiffs admit this information will show "an objective methodology exists" to prove chronic understaffing. The Defendant argues not only is this a matter requiring expert testimony, because it seeks to prove the staffing levels fail to meet a standard of care, but also, the Plaintiffs' proposed requests are akin to reverse engineering – that is to say, the Plaintiffs' methodology must be capable of repetition, similar to geometrical equations or recipes. If the Defendant's managed facilities were truly this understaffed as alleged,

---

[18] The Defendant cites Interrogatory No. 4 and Document Request No. 23 which ask for documents that show how corporate control is exerted through compensation incentives and corrective and/or disciplinary action when staffing levels exceed the budgets, targets and/or labor benchmarks set by headquarters. The Defendant further characterizes these requests as a fishing expedition for liability and not pertinent to any valid class certification analysis.

[19] The Defendant identifies Document Request Nos. 3, 12, 13, 17, 18, 26, 27, and 28 seeking staffing, occupancy levels and resident needs.

it is reasonable that these facilities would have been shut down as a result of the regular inspections conducted by the State. The Defendant argues the Plaintiffs' requests for this granular data (staffing and occupancy levels and resident needs) are simply not relevant in the context of class certification; however, the Defendant states it has provided the Plaintiffs exemplar documents that illustrate this information for any given facility.

Regarding the issues related to corporate control, the Defendant states it has provided responsive information concerning its employees via meet and confer.

The Defendant also asserts the Plaintiffs seek information that is the property of a non-party, which has an interest in privacy or confidentiality.[20] While the Defendant states that it has access to this information, it does not have legal control over it. Further, the Defendant states it does not own the facilities named in the Complaint, but only manages them, and only the facilities' Executive Director (commonly known as Residence Manager) is an employee of the Defendant, all other personnel are the employees of the facilities' owner-operator. The Defendant points out that its agreement to manage these facilities expressly reflects that records pertaining to residents and personnel are regarded as proprietary information belonging to the owner-operator; additionally, to the extent the Plaintiffs ask for documents related to resident needs, these documents would require extensive redaction as they contain sensitive, but also irrelevant, information.

## Relevant Law

Pursuant to Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure, a court is required, on motion or on its own, to limit the frequency and extent of discovery, when:

---

[20] The Defendant cites Document Request Nos. 12, 13, 17, 18, 23, 26, 27, and 28 concern information held by a non-party subject to discovery by subpoena and Interrogatory No. 4 and Document Request No. 23 concern information in which a non-party has privacy interests.

>   (1) the discovery sought is unreasonably cumulative or duplicative;
>
>   (2) the discovery can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
>   (3) the party seeking the discovery has already had ample opportunity to collect the requested information by discovery in the action; or
>
>   (4) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Thus, "[r]elevance is . . . the foundation for any request for production, regardless of the individual to whom a request is made." Cook v. Howard, 484 Fed.Appx. 802, 812 (4th Cir. 2012). This Rule "cautions that all permissible discovery must be measured against the yardstick of proportionality." Lynn v. Monarch Recovery Management, Inc., 285 F.R.D. 350, 355 (D. Md. 2012) (quoting Victor Stanley, Inc. v. Creative Pipe, Inc., 269 F.R.D. 497, 523 (D. Md. 2010)). "[I]t remains true that 'relevancy in discovery is broader than relevancy for purposes of admissibility at trial.' " In re: American Medical Systems, Inc. Pelvic Repair Systems Product Liability Litigation, Nos. 2:14-cv-11870, 2:14-cv-28142, 2016 WL 4411506, at *2 (S.D.W. Va. Aug. 17, 2016) (Eifert, M.J.) (quoting Amick v. Ohio Power Co., No. 2:13-cv-6593, 2013 WL 6670238, at *1 (S.D.W. Va. Dec. 18, 2013)).

Finally, Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure provides that if a motion to compel is granted – or if the disclosure or requested discovery is provided after the motion was

filed – the court must, after giving the parties an opportunity to be heard, require the party whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees. However, the court must not order this payment should the opposing party's nondisclosure, response, or objection was substantially justified, or other circumstances make an award of expenses unjust. See Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).

Rule 23(a) of the Federal Rules of Civil Procedure "requires a party seeking class certification to satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011). In addition, the proposed class must satisfy at least one of the three requirements listed in Fed. R. Civ. P. 23(b). Id. at 345. Rule 23(a)(2) requires that the claims of a proposed class share common questions of law or fact. Fed. R. Civ. P. 23(a)(2); Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 359 (2011). Commonality requires that the Plaintiffs demonstrate that the class members have "suffered the same injury." Id. at 350. (internal citations omitted). The claims of the proposed class "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. "What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." Id. (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 132 (2009)).

The Rule 23(a)(2) commonality and Rule 23(b)(3) predominance inquiries are necessarily

overlapping, with the predominance requirement being "far more demanding." Gray v. Hearst Commc'ns, Inc., 444 F. App'x 698, 701 (4th Cir. 2011)(citing Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 623 (1997)). Rule 23(b)(3) predominance tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." Gray v. Hearst Commc'ns, Inc., 444 F. App'x at 701. "In other words, to satisfy Rule 23(b)(3), common questions must predominate over any questions affecting only individual members; such that a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." Id. (internal quotation marks, punctuation, and citations omitted). The Supreme Court recognized that a court's rigorous analysis under Rule 23(a) frequently "will entail some overlap with the merits of the plaintiff's underlying claim… [t]hat cannot be helped." Dukes, 564 U.S. at 351. Further, the Supreme Court stated that class certification "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Id. (internal citations omitted). There is not "anything unusual" about the "consequence" of some overlap with the merits, as the "necessity of touching aspects of the merits in order to resolve preliminary matters . . . is a familiar feature of litigation." Id.

### Ruling

As an initial matter, the undersigned finds the Defendant's arguments surrounding the Plaintiffs' citation to legal authorities absent from their original pleading warrants a denial of their Revised Motion lacks merit – the undersigned directed the Plaintiffs to submit an updated pleading because the parties had achieved progress in resolving some outstanding discovery issues, and directed the Defendant to file a response thereto – notably, no party objected or disagreed with this revised briefing schedule or this Court's instruction on same. Indeed, the only reason why the undersigned ordered a revised briefing schedule for any updated pleadings was because of this

ongoing discovery dispute requiring this Court's intervention.

As an additional matter, the undersigned notes that the Plaintiffs have yet to serve their motion for class certification, and while the deadline for filing this motion has not expired, clearly, the issues presented here suggest the information necessary to support such a motion precludes filing the motion for class certification at this time. Therefore, to facilitate these proceedings so that the Plaintiffs can serve the appropriate motion for class certification, the undersigned **FINDS** as follows:

The Plaintiffs' Request for Production Nos. 3, 12, 13, 17, 26, 27, and 28 and Interrogatory No. 4 are relevant and proportional to the needs of this case, and specifically, further the Plaintiffs' pursuit of discovery that lends support for the impending class certification to be decided by the District Judge. None of these Requests or the Interrogatory seek information that is privileged, proprietary or confidential. To the extent the Defendant claims it has no "legal right" to materials responsive to these discovery requests, the Court notes that other courts within this Circuit recognized that "control" under Rule 34(a)(1) means "actual possession of a document or 'the legal right to obtain the document on demand.' " See Hatfill v. New York Times Co., 242 F.R.D. 353, 355 (E.D. Va. 2006). Indeed, while analyzing a motion to compel production under Rule 34, this Court recognized that the issue before the Court was not who is the appropriate custodian of the documents, rather, the focus is on who exercised supervision and control over them. See Mt. Hawley Ins. Co. v. Felman Prod., Inc., 269 F.R.D. 609, 620 (S.D.W. Va. 2010). The Plaintiffs in this case have demonstrated that the Defendant has full access to the requested materials – and that notwithstanding the Defendant's argument that it does not "own" any of the subject facilities, it clearly exercises significant control over them. At a minimum, the Defendant has exercised significant "possession" of these materials in order to produce exemplars to the Plaintiffs during

13

discovery.

To the extent that the Defendant contends that these requests concern merit-based discovery and not geared towards class certification, given the nature of the Plaintiffs' allegations in this lawsuit, there really is no clear-cut division between merits and class certification discovery. This falls squarely in the "overlap" recognized by the Supreme Court in Dukes, *supra*. Therefore, the foregoing discovery requests are appropriate at this stage in these proceedings.

Accordingly, the Plaintiffs' Motion to Compel responsive documents pursuant to Request for Production No. Nos. 3, 12, 13, 17, 26, 27, and 28 and Interrogatory No. 4 is **GRANTED**.

However, regarding the Plaintiffs' Request for Production No. 18, the undersigned agrees with the Defendant that at this point in the litigation, documents responsive to this Request would not further class certification efforts. The Defendant has provided other responsive information concerning staffing levels during the course of discovery, which was noted during the video conferences hosted by the undersigned. Nevertheless, how the names, job titles, clocking in and out times, total hours worked and for break times, and dates of hire and termination and reasons for termination – while likely helpful to the Plaintiffs' case – do present as more merits-based discovery queries than for class certification purposes. Additionally, as the Defendant points out, this Request concerns confidential or privileged information, notwithstanding the Protective Order governing discovery in this case (ECF No. 53). Accordingly, the Plaintiffs' Motion to Compel responsive documents pursuant to their Request for Production No. 18 is **DENIED**.[21]

Regarding the Plaintiffs' Request for Production No. 23, the Defendant has represented to this Court that it has already produced responsive information pertaining to Executive

---

[21] It goes without saying that the Plaintiffs may file another motion to compel should this case proceed following class certification, and should the Defendant rebuff their efforts to obtain discovery that is relevant and proportional to the needs of this case.

Director/Residence Managers (See ECF No. 90 at 17, fn8). This Request concerns "performance evaluation, disciplinary reports, counseling records and remedial plans" for numerous personnel[22] (See ECF No. 39 at 31). Again, while the undersigned appreciates this information can potentially help the Plaintiffs' case, the additional discovery does not provide further support for their impending motion to certify the class, particularly given the Defendant's production concerning what is purported to be the primary employees in charge of the subject facilities. Further, as noted by the Defendant, this Request necessarily calls for confidential information, and while it may fall under the Protective Order in this case, it is *facially* duplicative of the discovery provided for class certification reasons, but can lend itself towards the merit-based discovery. Accordingly, the Plaintiffs' Motion to Compel responsive documents pursuant to their Request for Production No. 23 is **DENIED**.[23]

Accordingly, for the reasons stated herein, the ***Plaintiffs' Revised Motion to Compel Answers to Interrogatories and Production of Documents*** (ECF No. 81) is hereby **GRANTED** in **PART** and **DENIED** in **PART**.

Having considered the arguments and pleadings of the parties, as well as the legal authority that governs the issues raised herein, the undersigned declines to issue sanctions against the Defendant. Considering the factors under Rule 37(a)(5)(A)(ii) and (iii) of the Federal Rules of Civil Procedure, it is apparent that the Defendant has complied with many of the Plaintiffs' discovery requests, while maintaining its objections to others; the Defendant also has had in good faith explained its reasoning for maintaining its objections. Thus, the Defendant has demonstrated

---

[22] As noted in footnote number 10, *supra*, the personnel specified also include: assistant executive directors, wellness managers, resident coordinators, resident managers, and any employees with care-giver staffing responsibilities.

[23] See footnote 21, *supra*.

substantial justification for its objections to certain discovery demands. Therefore, an award of the Plaintiffs' attorneys' fees and costs incurred in this discovery matter would be unjust under the circumstances. In addition, the ongoing negotiations that the parties had apparently been able to achieve during discovery prior to this Court's intervention renders such a sanction unjust under the circumstances.

In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, the parties may contest the ruling set forth above on this non-dispositive motion by filing its objection to same within 14 days with District Judge Frank W. Volk. Accordingly, the Defendant's obligation to disclose the materials discussed herein are hereby **STAYED**, pending the filing of any objections. If objections are filed, the District Judge will consider the objections and modify or set aside any portion of this Order found clearly to be erroneous or contrary to law. If objections are not filed, the Defendant's obligation to disclose the materials discussed herein shall be made no later than the end of business (5:00 pm) **August 4, 2023**.

The Clerk is requested to distribute a copy of this Order to all counsel of record.

**ENTER: July 20, 2023.**



Omar J. Aboulhosn
United States Magistrate Judge